HELEN D. EMMET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. L. R. EMMET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11867, 11868.  Promulgated July 28, 1948.

*W. Pitt Gifford, Esq.*, and *Frederick F. Jones, Esq.*, for the petitioners.

*Stanley W. Herzfeld, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: The first question for consideration is whether petitioners appropriated their former residential property to an income-producing purpose prior to its sale. If they did not so convert it, no loss from the sale would be deductible under section 23 (e) (1) of the Internal Revenue Code and section 29.23 (e)–1 of Regulations 111.[1]

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*       \*       \*       \*       \*       \*       \*

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

\*       \*       \*       \*       \*       \*       \*

SEC. 29.23 (e)–1 [Regulations 111]. LOSSES BY INDIVIDUALS.—

\*       \*       \*       \*       \*       \*       \*

A loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible. If, however, property so purchased or constructed is prior to its sale rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss from the sale of the property, computed as provided in section 111, is, subject to the limitations provided in section 117, an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale.

If they did so convert it, such loss as may be determined from the evidence, if any, from the sale of the property is properly deductible for income tax purposes in 1942. Our primary consideration, therefore, is whether the property was converted to an income-producing purpose prior to its sale.

There was no agreement between petitioners and either the Red Cross or Bundles for Britain providing for the payment of rent. Petitioners argue, however, that "the rental was the promise on the part of the lessee to secure an abatement of the local real estate taxes on the property and to maintain the premises in good repair during occupancy." It is true that the Red Cross was successful in securing an abatement of certain local taxes on the property and that both the Red Cross and Bundles for Britain expended money for its maintenance and upkeep. From the record, however, we think petitioners' motive in permitting those organizations to occupy the property was associated with charity rather than with production of income. Both H. L. R. and Helen were actively interested in charitable work, the latter being particularly concerned with Bundles for Britain. The repairs made on the premises were exclusively for the benefit of the Red Cross and Bundles for Britain.

Abatement of taxes is not income and the amount thereof is not taxable unless it represents a refund of taxes previously paid and deducted for income tax purposes. The aphorism that "a penny saved is a penny earned" has no significance taxwise. There is no proof in the record that either of the petitioners ever treated the taxes saved or the expenditures made for maintenance and upkeep by those organizations as income in their tax returns. This fact is convincing proof that they did not consider such items as rent or intend the arrangement with the Red Cross and Bundles for Britain to be an appropriation of their former residential property to an income-producing purpose. We stated in *Maurice P. O'Meara*, 8 T. C. 622, 633, "A taxpayer may not take a loss in connection with an income item unless it has been previously taken up as income in an appropriate tax return." See also cases therein cited.

In view of the above, we are of opinion that, although the arrangement made by petitioners providing for the use of their former home by the above mentioned organizations was a commendable one, the property was not converted to an income-producing purpose prior to its sale. Petitioners may not, therefore, deduct any loss resulting from such sale. See Mertens, Law of Federal Income Taxation, section 28.78, and cases cited.

The loss claimed by petitioners is not deductible for another reason. We believe petitioners have failed to prove that the fair market value of the property was $40,000 in May 1940. Petitioners' expert witness

stated that he would "like" to place the fair market value of that property in May 1940 in a range of between $25,000 and $30,000. He gave none of the underlying facts upon which such valuation was based. His estimated fair market value apparently was based primarily upon the city of Erie's assessed valuation of the property for the triennium 1940 through 1942. He failed to testify, however, with respect to the basis for such assessed valuation. In Mertens, Law of Federal Income Taxation, section 59.85, it is stated:

If there is no showing as to the basis of the assessment, that is, if the ratio between market value and assessed value is not proved, no attention will be paid to the tax assessments. Of course, if it is shown affirmatively that the assessed valuation bears little relation to market value because the assessment is based on cost of reproduction, or for any other reason, the evidence is considered of slight importance.

Respondent's expert of some 21 years experience in local real estate business testified that in his opinion there was little relation between the city's assessed valuation and the fair market value of the property. He further stated that in his opinion the property's fair market value at the time it was first occupied by Red Cross was $15,000. In reaching his conclusion he checked transactions involving similar and other property in the area of petitioners' former residence, he studied trends in the neighborhood, he inspected neighboring dwellings, and he considered the operating costs of petitioners' property. In Mertens, *supra*, section 59.04 (vol. 10, pp. 445, 446), it is stated:

A common fallacy in offering opinion evidence is to assume that the opinion is more important than the facts. To have any persuasive force, the opinion should be expressed by a person qualified in background, experience, intelligence, familiarity with the property, and with the valuation problem involved. It *should also refer to all the underlying facts upon which an intelligent judgment of valuation should be based.* The facts must corroborate the opinion; otherwise, the opinion will be discounted. * * *

In view of the above, we hold that the fair market value of the property in May 1940 was $15,000.

Petitioners, moreover, neither introduced evidence of the useful life of such property nor proved the value allocable to the buildings at the time the Red Cross went into occupancy. Petitioners mentioned these points for the first time in their reply brief, but their arguments there fall far short of overcoming the lack of proof on these points in the record.

Section 29.23 (e)–1 of Regulations 111 provides that:

* * * a loss from the sale of the property, computed as provided in section 111, is, subject to the limitations provided in section 117, an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale.

Without evidence of the useful life and the allocable value of the buildings it is impossible to make a proper adjustment for depreciation, which, in accordance with the regulations, is prerequisite to determining the adjusted value of property at the time it is appropriated to an income-producing purpose.

Since we do not know the adjusted value of petitioners' property at the time the Red Cross first went into occupancy, we have no basis upon which to determine the amount of the loss from the sale of such property. Hence, we hold that petitioners have failed to establish that they incurred any deductible loss when they sold the property in question.

It follows that respondent did not err in his determination.

*Decisions will be entered for respondent.*